IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:                )
                                 )
SOUTH LINCOLN MEDICAL GROUP, P.C., )        CASE NO. BK07-41636-TLS
                                 )
                Debtor(s).       )          CH. 7

ORDER

Hearing was held in Lincoln, Nebraska, on February 13, 2008, on BryanLGH Medical Center's application for allowance of administrative expense claim (Fil. #38) and resistances by the Chapter 7 trustee (Fil. #45) and the debtor (Fil. #46). Joel Lonowski appeared for the debtor, Richard Garden, Jr., appeared for BryanLGH Medical Center, and Rick Lange appeared as the Chapter 7 trustee.

BryanLGH Medical Center seeks allowance of its administrative expense claim for rental payments and associated expenses for the post-petition use of premises by the debtor and the trustee. The debtor and the trustee object to the calculation of the amounts due.

The parties agree on the following facts:

1. The court has jurisdiction pursuant to 28 U.S.C. § 1334.
2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).
3. BryanLGH's application was filed pursuant to 11 U.S.C. § 503(b)(1)(A) and § 365(d)(3).
4. The debtor filed a voluntary Chapter 7 bankruptcy petition on August 30, 2007.
5. Rick Lange was appointed Chapter 7 trustee for this case on August 31, 2007, and continues to serve in that capacity.
6. On the date the debtor filed its Chapter 7 bankruptcy petition, the debtor was a party to a lease agreement dated April 30, 1994, for office space at BryanLGH Medical Center. The leased premises are known as Suite 712. The lease agreement has been modified from time to time. As of the petition date, the monthly rental charge under the lease agreement was $5,588.75, subject to annual adjustment as further set forth in the lease agreement.
7. Prior to the petition date, the debtor operated a medical practice in the leased premises. The debtor ceased active operations of its medical practice on July 31, 2007. At that time, the debtor removed all of the files and medical equipment that the former employee physicians of the debtor desired to use in their new practices. However, there remained at the leased premises at such time various items of miscellaneous equipment, files, computer equipment, and furniture and fixtures which needed to be removed from the leased premises before it could be re-let.
8. The trustee examined the leased premises on September 7, 2007, and determined that the furniture, fixtures, and other equipment and property at the leased premises would be burdensome to administer and would have inconsequential value to the bankruptcy estate. The trustee did note, however, that there were computer terminals

and certain documents that might potentially contain patient information and therefore the trustee determined to take possession of such items.

9. On September 13, 2007, the trustee filed a motion for approval of rejection of leases (Fil. #18), including the rejection of the lease agreement at issue here. No objections to the motion were filed, and the court entered an order on September 24, 2007, granting the motion (Fil. #23).

10. On September 26, 2007, the trustee caused his movers to remove from the leased premises the computer terminals, documents, and other items the trustee wished to store and preserve, and said movers completed their work on September 26, 2007.

11. On or about September 26, 2007, the trustee and counsel for BryanLGH conferred and the trustee informed BryanLGH's counsel that he had completed the removal of property claimed by the trustee from the leased premises.

12. During the period from August 30, 2007, to September 26, 2007, the trustee was allowed to remain in possession of the leased premises and use the same to store the items that the trustee ultimately removed from the leased premises on September 26, 2007.

13. On September 25, 2007, Nancy Ross, who is the spouse of one of the principals of the debtor, spoke with Scott Vyskocil of NAI FMA Realty, the leasing agent for the leased premises. Mr. Vyskocil memorialized the conversation in an e-mail message to David Reese of BryanLGH, a true and correct copy of which is in the record.

14. On October 9, 2007, counsel for BryanLGH contacted debtor's counsel, who confirmed that all property which the debtor wished to retain had been removed from the leased premises and that anything remaining in the leased premises could be disposed of by BryanLGH.

15. Following the abandonment of the leased premises by the trustee and the debtor, BryanLGH removed from the leased premises property that the trustee and the debtor had abandoned.

16. BryanLGH incurred actual and necessary expenses of $712.60 for labor and disposal fees to remove materials from the leased premises.

17. The trustee is currently storing property removed from the leased premises in temperature-controlled storage at a cost of $77.00 per month.

The application was brought under 11 U.S.C. § 503(b)(1)(A), which permits an allowed administrative expense for the actual, necessary costs and expenses of preserving the estate, and under 11 U.S.C. § 365(d)(3), which directs the trustee to timely perform all of the debtor's obligations under any unexpired lease of nonresidential real property until the lease is assumed or rejected. Section 365(g)(1) is also applicable, as it provides that the trustee's rejection of the lease constitutes a pre-petition breach of the lease.

In considering BryanLGH's request, three distinct categories of expenses must be addressed. First is the time period between the petition date and the date the trustee rejected the lease. For this, BryanLGH is entitled to an administrative expense for rent without regard to a demonstration of benefit to the bankruptcy estate under § 503(b)(1). *In re Brewer*, 233 B.R. 825, 829 (Bankr. E.D. Ark. 1999); *In re Liberty Outdoors, Inc.*, 205 B.R. 414, 417 (Bankr. E.D. Mo. 1997); *In re Samuel Rubens*, Case No. BK95-81111 (Bankr. D. Neb. Mar. 5, 1996).

Courts within the Eighth Circuit come down on both sides of the issue with regard to ascertaining the rejection date for purposes of calculating the number of days for which rent is due. One line of cases holds that the lease is rejected when the trustee "clearly communicat[es] in an unequivocal manner" his intention. *In re 1 Potato 2, Inc.*, 58 B.R. 752, 754-55 (Bankr. D. Minn. 1986). Another line of cases holds that the effective date of the lease rejection is the date on which the court order approving the rejection is entered. *In re Worths Stores Corp.*, 130 B.R. 531, 533-34 (Bankr. E.D. Mo. 1991) (allowing rejection upon filing of motion runs contrary to Fed. R. Bankr. P. 6006(a) and 9014, and renders court order meaningless). The treatise *Collier on Bankruptcy* describes the split of authority:

> The majority view is that the entry of the order is required to absolutely reject the contract or lease. This is the preferred view, because the other party to the lease cannot act to mitigate damages until the court order is actually entered. The minority view is that rejection is effective as of the date of the motion.

10 *Collier on Bankruptcy* ¶ 6006.01[4] (Alan N. Resnick et al. eds., 15th ed. rev.). *Collier's* also notes, however, that several courts which follow the majority position have adopted a compromise version in holding that the filing date of the motion can be the effective date of the rejection if the equities of the situation allow. *Id.* (citing *Thinking Mach. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Mach. Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995)). *See also Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064 (9th Cir. 2004), *cert. denied*, 546 U.S. 814 (2005); *Stonebriar Mall Ltd. P'ship v. CCI Wireless, LLC (In re CCI Wireless, LLC)*, 297 B.R. 133 (D. Colo. 2003).

In the present case, the Chapter 7 trustee filed a motion for approval of his rejection of the lease on September 13, 2007. He expressly stated his desire to reject the lease "effective immediately" (Fil. #18 at ¶ 3) and obtained a seven-day resistance deadline to expedite the rejection (Fils. #15 and 16). No objections were filed, and the trustee's motion was approved on September 24, 2007 (Fil. #23). The moving party was aware the trustee intended the lease rejection to be effective as of September 13, 2007, and proceeded accordingly. For purposes of the present motion, I find that the lease was rejected as of September 13, 2007, and BryanLGH is entitled to an administrative expense for rent from the petition date of August 30, 2007, through the rejection date of September 13, 2007.

The movant's attorney fees for the post-petition, pre-rejection period are also appropriate expenses under § 365(d)(3) if provided for in the lease. *In re Exch. Res., Inc.*, 214 B.R. 366 (Bankr. D. Minn. 1997); *Rubens*, Case No. BK95-81111 (Bankr. D. Neb. Mar. 5, 1996).

The parties agree that the trustee continued to occupy the premises by storing certain of the debtor's personal property there until September 26, 2007. The rent due for the period from September 13th to September 26th is the second category to consider. Because the trustee's use of the premises was beneficial to the bankruptcy estate, BryanLGH is entitled to an administrative expense claim under § 503(b)(1)(A) for this period. *In re JAS Enter., Inc.*, 180 B.R. 210 (Bankr. D. Neb. 1995); *In re Bilyk*, 101 B.R. 586 (Bankr. E.D. Mo. 1989).

The only evidence before the court of the fair rental value of the premises between August 30, 2007, and September 26, 2007, is the monthly rent of $5,588.75 as stated in the lease. Therefore, BryanLGH is entitled to recover its per diem rental for those 27 days.

Finally, BryanLGH seeks allowance of an administrative expense claim for its costs after the trustee vacated the premises on September 26, 2007, including rent through mid-October – as BryanLGH did not have confirmed knowledge until October 9, 2007, that the premises were available and needed time thereafter to ready the premises for re-letting – and fees for cleaning out the suite. The parties agree that the trustee removed the debtor's stored property on September 26, 2007. Therefore, there is no basis for an administrative expense claim after that date. The amounts claimed by BryanLGH are damages flowing from the breach of the lease contract, which the Bankruptcy Code deems to have occurred immediately pre-petition. § 365(g)(1). These damages constitute a general unsecured claim, unless the movant can catapult it into an administrative claim by demonstrating a tangible benefit to the bankruptcy estate. *Robert M. Hallmark & Assoc., Inc. v. Athens/Alpha Gas Corp. (In re Athens/Alpha Gas Corp.)*, 332 B.R. 578, 581 (B.A.P. 8th Cir. 2005); *Rubens*, Case No. BK95-81111 (Bankr. D. Neb. Mar. 5, 1996). Here, there is no evidence of a tangible benefit to the estate. The expenses are normal lease termination expenses, and are not entitled to administrative expense status. This includes late fees and post-rejection attorney fees. *Rubens* at 10; *Contemporary Indus. Corp.*, Case No. BK98-80382 (Bankr. D. Neb. Apr. 22, 1999).

IT IS ORDERED: BryanLGH Medical Center's application for allowance of administrative expense claim (Fil. #38) is granted to the extent that BryanLGH is granted an allowed administrative expense claim of $4,960.97[1] for rent due for the period from the bankruptcy petition date of August 30, 2007, to the date the trustee removed the debtor's property from the premises on September 26, 2007. BryanLGH's allowed administrative expense claim shall also include $1,508.00 for attorneys' fees. The remaining amounts requested are damages related to the breach of the lease and are subject to allowance as pre-petition unsecured claims.

DATED:    February 21, 2008.

                                                BY THE COURT:

                                                /s/ Thomas L. Saladino
                                                United States Bankruptcy Judge

Notice given by the Court to:
    *Richard Garden, Jr.        Joel Lonowski
    Rick Lange                  United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.

---

[1] Monthly rent of $5,588.75 x 12 months / 365 days = $183.73972 daily rent x 27 days = $4,960.97.